**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| ***In re:*** <br><br> ***PHVC4 HOMES, LLC, ET AL.*** [1] <br><br> ***Debtors.*** | ***Chapter 11*** <br> ***Case No. 24-02751-TOM11*** <br><br> ***(Jointly administered)*** |
| **PHCV4 Homes, LLC; Bridgetopia, LLC; Prominence Homes & Communities, LLC; Misty M. Glass; Scott Underwood; and Michael R. McMullen,** <br><br> ***Plaintiffs*****,** <br><br> **v.** <br><br> **CF Encore Purchaser, LLC; Encore SFR Finance, LLC; and CoreVest American Finance, LLC,** <br><br> ***Defendants*****.** | ***Adversary Proceeding*** <br><br> ***Case No.*** **________________** |

**COMPLAINT**

Plaintiffs PHCV4 Homes, LLC; Bridgetopia, LLC; Prominence Homes & Communities, LLC; Misty M. Glass; Scott Underwood; and Michael R. McMullen, by and through undersigned counsel, hereby sue CF Encore Purchaser, LLC; Encore SFR Finance, LLC; and CoreVest American Finance, LLC, asserting claims of tortious interference with business relationships, civil conspiracy, breach of the implied duty of good faith and fair dealing, and breach of contract. In support of these claims, Plaintiffs state as follows:

[1] *The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: PHCV4 Homes, LLC (4073), Prominence Homes & Communities, LLC (9356), and Bridgetopia, LLC (6424). The Debtor's address is 3821 Lorna Road, Suite 120, Hoover, AL 35244.*

**Parties**

1. PHCV4 Homes, LLC is a limited liability company which has one member: Prominence Builders Two, LLC.

2. The members of Prominence Builders Two, LLC are Misty M. Glass, Scott Underwood, and Michael R. McMullen, who are individuals domiciled in Alabama and thus are citizens of Alabama.

3. Thus, PHCV4 Homes, LLC is a citizen of Alabama.

4. Bridgetopia, LLC is a limited liability company which has one member: Battlebridge Galactica, LLC. .

5. The members of Battlebridge Galactica, LLC are Misty M. Glass and Michael McMullen, who are individuals domiciled in Alabama and thus are citizens of Alabama.

6. Thus, Bridgetopia, LLC is a citizen of Alabama.

7. Prominence Homes & Communities, LLC is a limited liability company with one member: Prominence Builders, LLC.

8. The members of Prominence Builders, LLC are Misty M. Glass, Scott Underwood, and Michael McMullen, who are individuals domiciled in Alabama and thus are citizens of Alabama.

9. Thus, Prominence Homes & Communities, LLC is a citizen of Alabama.

10. Misty M. Glass is an individual domiciled in Alabama and thus is a citizen of Alabama.

11. Scott Underwood is an individual domiciled in Alabama and thus is a citizen of Alabama.

12. Michael R. McMullen is an individual domiciled in Alabama and thus is a citizen of Alabama.

13. CF Encore Purchaser LLC is a limited liability company which has one member: CF Encore Purchaser Holdings, LLC.

14. CF Encore Purchaser Holdings, LLC is a limited liability company which has three members: FCO MA V UB Securities LLC, FCO V Expansion USTMA-C LLC, and Sup FCO MA III Exp Investments LLC, (collectively, the "FCO LLCs") which each are limited liability companies that have seven members.

15. The FCO LLCs each have seven members: FCO MA V L.P. (a Cayman Islands limited partnership); Fortress Credit Opportunities Fund V Expansion (E) LP (a Delaware limited partnership); Fortress Credit Opportunities Fund V Expansion (A) LP (a Delaware limited partnership); FCOF V Expansion CDFG MA-C Investment LLC (a Delaware limited liability company); FCOF V Expansion B Investments LLC (a Delaware limited liability company); FCOF V Expansion (H) Investments LLC (a Delaware limited liability company); and Super FCO MA III L.P. (a Cayman Islands limited partnership).

16. Fortress Credit Opportunities Fund V Expansion (E) LP, Fortress Credit Opportunities Fund V Expansion (A) LP, and Super FCO MA III L.P. are each made of limited partner members which are all residents of the Cayman Islands.

17. FCOF V Expansion CDFG MA-C Investment LLC, FCOF V Expansion B Investments LLC, and FCOF V Expansion (H) Investments LLC each have limited partner members which themselves made up of limited partner members which are all residents of the Cayman Islands.

18. CF Encore Purchaser Holdings, LLC is therefore a citizen of the state in which it was formed, Delaware.

19. CF Encore Purchaser LLC is therefore a citizen of the state of which its sole member is a citizen: Delaware.

20. Encore SFR Finance LLC is a limited liability company which has one member: Encore Finance Group, LLC.

21. Encore Finance Group, LLC is a limited liability company which has one member: Elizabeth O'Brien, an individual domiciled in New York, New York.

22. Thus, Encore SFR Finance, LLC is a citizen of New York.

23. CoreVest American Finance Lender, LLC is a limited liability company which has one member: Redwood Trust, Inc.

24. Redwood Trust, Inc. is a corporation incorporated in the state of Maryland.

25. Thus, CoreVest American Finance Lender, LLC is a citizen of Maryland.

**Jurisdiction and Venue**

26. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of Delaware, New York, and Maryland and citizens of Alabama, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

27. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to this action occurred in, and a substantial part of the property that is subject of this action is situated in, this judicial district.

**Background Facts**

28. Plaintiffs Glass, Underwood, and McMullen own and operate a number of companies in the business of building residential homes.

29. Glass, Underwood, and McMullen formed Prominence Homes, LLC, a residential homebuilder, to construct build-to-rent houses.

30. As their business grew, Glass, Underwood, and McMullen formed PHCV4 Homes, Bridgetopia (just Glass and McMullen), and Prominence Homes & Communities, amongst other companies, to purchase ready to build lots to construct residential dwellings on.

31. Glass, Underwood, and McMullen developed a relationship with Elizabeth O'Brien ("O'Brien"), founder and then-CEO of CoreVest American Finance Lender, LLC ("CoreVest"), and through O'Brien – certain of Glass, Underwood, and McMullen's companies began doing business with CoreVest in 2019.

32. In February 2019, Glass, Underwood, and McMullen formed Prominence Homes & Communities, LLC ("PH&C") to purchase ready to build lots to construct residential dwellings on. PH&C contracted with Prominence Homes, LLC ("PH") to construct the residential dwellings.

33. In January 2019, Glass and McMullen formed Bridgetopia, LLC to hold completed inventory of residential dwellings pending sale to investors and primary buyers.

34. In February 2023, Glass, Underwood, and McMullen formed PHCV4 Homes, LLC to purchase ready to build lots to construct residential dwellings. PHCV4 Homes contracted with PH to construct residential dwellings.

35. From early 2019 through 2023, Prominence Homes & Communities, Bridgetopia, and PHCV4 Homes had an extremely successful relationship with CoreVest, collectively borrowing and repaying more than $500 Million.

36. On November 16, 2021, PH&C executed and delivered to CoreVest a promissory note in the amount of $80,000,000.00 for the purchase of certain lots and construction of residential homes thereon.

37. On or about February 17, 2022, Bridgetopia executed and delivered to CoreVest a promissory note in the amount of $20,000,000.00.

38. On or about April 5, 2023, PHCV4 executed and delivered to CoreVest a promissory note in the amount of $80,000,000.00 for the purchase of certain lots and construction of residential homes thereon.

39. In 2023, O'Brien left CoreVest and formed her next private debt venture – Encore SFR Finance, LLC.

40. In June 2023, O'Brien began discussing an opportunity to work with O'Brien's new company Encore with Glass, Underwood, and McMullen, which Encore wanted, particularly to give it credence as a "Build-to-Rent" lender.

41. O'Brien represented to Glass, Underwood, and McMullen that her new company – Encore – could provide the same terms and administer the loan consistent with the longstanding practices of the parties' prior dealings when O'Brien was at CoreVest.

42. Glass, Underwood, McMullen, and PHB 2023, LLC (a Debtor Affiliate of the Debtors) executed agreements with Encore SFR Finance, LLC on October 9, 2023 in connection with PHB 2023, LLC's $50,000,000.00 Construction Line of Credit.

43. Encore SFR Finance, LLC assigned the PHB 2023, LLC loan documents to CF Encore Purchaser LLC.

44. Both Encore and CoreVest required Glass, Underwood, and McMullen to execute Completion Guaranties, guaranteeing the completion of the residential properties.

45. In early 2023, due to changing market conditions, corporate investors were not purchasing PH&C, Bridgetopia, and PHCV4 Homes's completed inventory at the volume anticipated, so the Debtor Plaintiffs pivoted and increased sales to individuals and individual investors. Both CoreVest and Encore SFR were informed by Plaintiffs of this adjustment in sales strategy at the time.

46. In January 2024, due to slowing sales of completed inventory, the Plaintiff entities lacked the requisite cashflow to keep vendors timely paid to finish the work-in-progress inventory.

47. Due to the value of the work-in-progress inventory, the Defendants refused to advance additional funds from their respective lines of credit extended to Plaintiffs, despite ample excess credit available on those lines, due to loan-to-value ratios which would not allow additional draws until the work-in-progress inventory was completed and valued accordingly.

48. Essentially, despite full knowledge that Plaintiffs' businesses used loan proceeds to purchase land and build homes– and the need for project costs in addition to property acquisition costs - the Defendants would only consider the value of the lots until completion, hamstringing Plaintiffs' ability to use the loan proceeds as anticipated by both parties to each agreement.

49. At this point, Plaintiffs' primary objective was to negotiate terms with their lenders to allow sufficient liquidity for Plaintiffs to continue to complete the work-in-progress inventory, and sell completed inventory to individual and corporate investors and primary buyers.

50. Plaintiffs also contacted other lenders, mostly local and regional banks, to find additional liquidity to continue the projects.

51. During this period, CoreVest was not requiring Plaintiffs to make regular debt service payments due to the temporary cashflow issue that CoreVest was working with Plaintiffs

to resolve, representing that it too wanted to find a solution to allow Plaintiffs to complete the projects.

52. Conversely, during this same period, Encore was requiring its borrower – PHB 2023, LLC to make its debt service payments or Encore would not even consider a workout solution to allow completion of the inventory, which would benefit Glass, Underwood, and McMullen, PHB 2023, and Encore.

53. In March 2024, Plaintiffs Glass, Underwood, and McMullen traveled to Irvine, California to meet with CoreVest representatives regarding workout and restructuring options that would allow Plaintiffs to finish construction of the residential homes as planned.

54. Between March 2024 and May 2024, Plaintiffs continued negotiating terms of an agreement that would provide Plaintiffs the liquidity needed to complete the work-in-progress inventory without CoreVest having to increase the existing credit facilities' loan-to-value ratios through the creation of two new credit facilities from which Plaintiffs could access the capital needed to complete the projects, which would benefit both Plaintiffs and CoreVest.

55. CoreVest provided Plaintiffs with a term sheet setting forth the terms and conditions of the prospective credit facilities, representing that it was okay to not make current installment payments so long as the workout solution agreed upon would allow completion of the projects.

56. Agreements on these terms were reached in principle, and the documentation of each deal was imminent.

57. In May 2024, at the IMN Single Family Rental Investment Conference, employees of CoreVest were discussing business matters with employees of Encore at a bar, including the confidential business information of Plaintiffs and PHB 2023.

58. Encore SFR employees, knowing that Plaintiffs and PHB 2023 were experiencing financial difficulties and were seeking workout solutions with each of their lenders, revealed to CoreVest that PHB 2023 was treating Encore differently from how the Debtor Plaintiffs were dealing with CoreVest – and was paying its monthly interest-only installment payments.

59. Encore did not tell CoreVest that it was refusing to negotiate with Glass, Underwood, McMullen, and PHB 2023 without timely receipt of interest-only payments monthly.

60. Encore knew of Debtor Plaintiffs' business relationships with CoreVest and knew that they were on the brink of signing new agreements that would allow Debtor Plaintiffs to survive the referenced cashflow issues.

61. Encore knew that telling CoreVest that PHB 2023 was current on its monthly payments would destroy any prospective resolution between Debtor Plaintiffs and CoreVest.

62. Encore revealed this information anyway, intentionally, to disturb the Debtor Plaintiffs' business relationships with CoreVest and prospective new credit facilities.

63. CoreVest refused to consummate the agreements reached in principle with Plaintiffs or fund new credit facilities to allow the construction of Debtor Plaintiffs' residential neighborhoods to be completed.

64. CoreVest also refused to lend any additional amounts under the Debtor Plaintiffs' existing credit facilities that had more credit available, which prevented Plaintiffs from being able to fulfill their obligations under agreements with third parties and prevented Plaintiffs from completing the residential developments, manufacturing another "default" for Plaintiffs' failure to complete the projects.

65. CoreVest aggressively pursued collection against the Debtor Plaintiffs, and began foreclosing on their properties on September 11, 2024, forcing the Debtor Plaintiffs to file bankruptcy petitions to protect and preserve their business operations and assets to the extent possible.

66. At the time of filing each of their petitions under Chapter 11 of the U.S. Bankruptcy Code, Bridgetopia, PHCV4 Homes, and PH&C were each special purpose entities and owners of significant real property in various stages of development as single-family residential dwellings, with a number of completed properties in inventory as well as properties with construction-in-progress.

67. The Debtor Plaintiffs were forced to sell the properties (those not foreclosed upon) in a distressed asset situation while in pending bankruptcy proceedings to prevent CoreVest from selling the properties at even lower forced liquidation prices through foreclosure sales.

68. Had the Debtor Plaintiffs been allowed to complete construction of the residential developments, they would have been able to sell the units at fair market price on the private market.

69. Due to the tortious and wrongful conduct by Encore and CoreVest, the Plaintiffs lost all of the equity they had in the properties.

70. Due to the tortious and wrongful conduct by Encore and CoreVest, the Debtor Plaintiffs collectively suffered a loss of equity and expected profit of nearly $20,000,000.00.

71. CoreVest foreclosed on nine of Bridgetopia's completed homes, and then through its bankruptcy proceedings, Bridgetopia sold four completed homes for $840,282.98, far below market value.

72. As a result, Bridgetopia suffered a loss of expected profits of $414,779.00.

73. In addition, Bridgetopia – and its beneficial owners Glass and McMullen – lost all of the equity they had in the Bridgetopia assets, resulting in a loss of $723,159.00.

74. CoreVest foreclosed on 25 of PH&C's completed and substantially completed homes, and then through its bankruptcy proceedings, PH&C sold 23 completed residential homes for $4,950,494.24, far below market value.

75. As a result, PH&C suffered a loss of expected profits of $2,379,655.00.

76. In addition, PH&C – and its beneficial owners Glass, Underwood, and McMullen – lost all of the equity they had in the PH&C assets, resulting in a loss of $1,550,955.00.

77. Through its bankruptcy proceedings, PHCV4 Homes sold 186 residential properties at various stages of completion for $18,393,934.56, far below market value, and PHCV4 Homes' remaining 16 properties are under contract and expected to sell for $645,161.28, also below market value.

78. As a result, PHCV4 Homes suffered a loss of expected profits of $9,384,180.00.

79. In addition, PHCV4 Homes – and its beneficial owners Glass, Underwood, and McMullen – lost all of the equity they had in the PHCV4 Homes assets, resulting in a loss of $5,036,566.00.

80. As a result of CF Encore, Encore SFR, and CoreVest's tortious and wrongful conduct, Glass, Underwood, and McMullen have also been made to incur significant legal fees in the amount of $674,000.00, which continues to increase.

**COUNT I**
**Tortious Interference with Business Relationships**
**(Against Encore SFR Finance, LLC)**

81. Plaintiffs adopt and incorporate all prior paragraphs as if fully restated herein.

82. Plaintiffs had business relationships with CoreVest.

83. Encore SFR had knowledge of Plaintiffs' business relationships with CoreVest.

84. Encore SFR – by and through its employees – intentionally interfered with Plaintiffs' business relationships with CoreVest by, among other things, sharing confidential information and telling CoreVest, which Encore SFR knew was negotiating terms to refinance certain loans owed by Plaintiffs, that PHB 2023 – another entity owned by Glass, Underwood, and McMullen – were current on monthly payments on its Encore loan.

85. As a result of this interference, which was intentionally done to tarnish Plaintiffs' credibility and destroy Plaintiffs and CoreVest's business relationships, the imminent credit agreements were never consummated.

86. As a result, Plaintiffs have suffered the loss of their companies - which had a substantial enterprise value at the time - and their property - which was seized and sold under market value.

87. As a result of Encore SFR's tortious interference, Plaintiffs lost their ability to receive benefit of the equity they had created in the properties, pay their vendors, and ultimately, its ability to even operate.

88. As a direct and proximate result of Encore SFR's conduct, Bridgetopia suffered a loss of expected profits of $414,779.00.

89. As a direct and proximate result of Encore SFR's conduct, Bridgetopia – and its beneficial owners Glass and McMullen – suffered a loss of $723,159.00 of equity in the Bridgetopia assets.

90. As a direct and proximate result of Encore SFR's conduct, PH&C suffered a loss of expected profits of $2,379,655.00.

91. As a direct and proximate result of Encore SFR's conduct, PH&C – and its beneficial owners Glass, Underwood, and McMullen – suffered a loss of $1,550,955.00 of equity in the PH&C assets.

92. As a direct and proximate result of Encore SFR's conduct, PHCV4 Homes suffered a loss of expected profits of $9,384,180.00.

93. As a direct and proximate result of Encore SFR's conduct, PHCV4 Homes – and its beneficial owners Glass, Underwood, and McMullen – suffered a loss of $5,036,566.00 of equity in the PHCV4 Homes assets.

94. As a direct and proximate result of Encore SFR's conduct, the ultimate beneficial owners of Debtor Plaintiffs Glass, Underwood, and McMullen suffered loss of profits equal to their respective ownership interests in the Debtor Plaintiffs.

95. As a direct and proximate result of Encore SFR's conduct, Glass, Underwood, and McMullen have also been made to incur significant legal fees in the amount of $674,000.00, which continues to increase.

**COUNT II**
**<u>Civil Conspiracy to Tortiously Interfere with Business Relationships</u>**
**(Against CF Encore Purchaser, LLC & Encore SFR Finance, LLC)**

96. Plaintiffs adopt and incorporate all prior paragraphs as if fully restated herein.

97. CF Encore and Encore SFR agreed to interfere with Plaintiffs' business relationship with CoreVest.

98. Encore SFR informed CF Encore that it knew Plaintiffs were not current on their monthly payment obligations with CoreVest; however, CF Encore was requiring its borrower and Glass, Underwood, and McMullen remain current to entertain additional advances under existing agreements.

99. Encore SFR agreed to interfere with Plaintiffs' business relationship with CoreVest on CF Encore's behalf.

100. Encore SFR tortiously interfered with those relationships by sharing confidential information it knew would be detrimental to those relationships.

101. As a result of CF Encore and Encore SFR's conspiracy to tortiously interfere with Plaintiff's business relationships, Plaintiffs have collectively suffered a loss of equity and expected profits of nearly $20,000,000.00.

102. As a direct and proximate result of CF Encore and Encore SFR's conduct, Bridgetopia suffered a loss of expected profits of $414,779.00.

103. As a direct and proximate result of CF Encore and Encore SFR's conduct, Bridgetopia – and its beneficial owners Glass and McMullen – suffered a loss of $723,159.00 of equity in the Bridgetopia assets.

104. As a direct and proximate result of CF Encore and Encore SFR's conduct, PH&C suffered a loss of expected profits of $2,379,655.00.

105. As a direct and proximate result of CF Encore and Encore SFR's conduct, PH&C – and its beneficial owners Glass, Underwood, and McMullen – suffered a loss of $1,550,955.00 of equity in the PH&C assets.

106. As a direct and proximate result of CF Encore and Encore SFR's conduct, PHCV4 Homes suffered a loss of expected profits of $9,384,180.00.

107. As a direct and proximate result of CF Encore and Encore SFR's conduct, PHCV4 Homes – and its beneficial owners Glass, Underwood, and McMullen – suffered a loss of $5,036,566.00 of equity in the PHCV4 Homes assets.

108. As a direct and proximate result of CF Encore and Encore SFR's conduct, the ultimate beneficial owners of the Debtor Plaintiffs Glass, Underwood, and McMullen suffered loss of profits equal to their respective ownership interests in the Debtor Plaintiffs.

109. As a direct and proximate result of CF Encore and Encore SFR's conduct, Glass, Underwood, and McMullen have also been made to incur significant legal fees in the amount of $674,000.00, which continues to increase.

**COUNT III**
**<u>Breach of Implied Duty of Good Faith and Fair Dealing</u>**
**(Against CoreVest American Finance Lender, LLC)**

110. Plaintiffs adopt and incorporate all prior paragraphs as if fully restated herein.

111. CoreVest and Plaintiffs are parties to numerous agreements and have had long-standing business relationships.

112. CoreVest's contracts with Plaintiffs are governed by New York law.

113. CoreVest, through these contracts, agreed to finance the purchase of land and construction of residential homes through its construction lines of credit CoreVest extended to PHCV4 Homes, Bridgetopia, and Prominence Homes & Communities.

114. CoreVest told Plaintiffs it would work with them between March and May of 2024 to either restructure existing debt or authorize creation of new credit facilities to allow the Plaintiffs to finish the projects it had financed to date.

115. CoreVest knew that loan proceeds would be used to pay the actual costs of completion of the residential homes.

116. CoreVest knew that until completion of the homes, the loan-to-value ratio under the terms of the loans would be impossible to comply with absent consideration of the after-repair-value (ARV) of the properties, otherwise the loan structure would not work for the projects it was expected to finance.

117. Because CoreVest was aware of these facts, it agreed to work out a solution with Plaintiffs or provide additional financing through new credit facilities.

118. After months of negotiations, it was agreed that CoreVest would extend two additional credit facilities to allow Plaintiffs to pay vendors and finish completion of the residential developments.

119. After learning that a separate entity operated by Glass, Underwood, and McMullen – PHB 2023 – was paying its lender monthly interest-only payments – CoreVest refused to provide the new financing as previously agreed.

120. CoreVest instead proceeded to exercise its rights under the contract – accelerating the entire indebtedness and foreclosing on the properties – in bad faith in order to realize gains that the contract did not contemplate CoreVest realizing.

121. As a direct and proximate result of CoreVest's conduct, Bridgetopia suffered a loss of expected profits of $414,779.00.

122. As a direct and proximate result of CoreVest's conduct, Bridgetopia – and its beneficial owners Glass and McMullen – suffered a loss of $723,159.00 of equity in the Bridgetopia assets.

123. As a direct and proximate result of CoreVest's conduct, PH&C suffered a loss of expected profits of $2,379,655.00.

124. As a direct and proximate result of CoreVest's conduct, PH&C – and its beneficial owners Glass, Underwood, and McMullen – suffered a loss of $1,550,955.00 of equity in the PH&C assets.

125. As a direct and proximate result of CoreVest's conduct, PHCV4 Homes suffered a loss of expected profits of $9,384,180.00.

126. As a direct and proximate result of CoreVest's conduct, PHCV4 Homes – and its beneficial owners Glass, Underwood, and McMullen – suffered a loss of $5,036,566.00 of equity in the PHCV4 Homes assets.

127. As a direct and proximate result of CoreVest's conduct, the ultimate beneficial owners of Debtor Plaintiffs Glass, Underwood, and McMullen suffered loss of profits equal to their respective ownership interests in the Debtor Plaintiffs.

128. As a direct and proximate result of CoreVest's conduct, Glass, Underwood, and McMullen have also been made to incur significant legal fees in the amount of $674,000.00, which continues to increase.

**COUNT IV**
**Breach of Contract**
**(Against CoreVest American Finance Lender, LLC)**

129. Plaintiffs adopt and incorporate all prior paragraphs as if fully restated herein.

130. CoreVest obtained confidential financial and business information about Plaintiffs in connection with the Loans.

131. After CoreVest decided it would rather take Plaintiffs' properties than work with Plaintiffs as promised, CoreVest was determined to prevent Plaintiffs from reaching an agreement with other investors, lenders, or financiers.

132. The Plaintiffs' agreements with CoreVest allowed dissemination of information in CoreVest's possession concerning the properties or the Plaintiffs in very limited circumstances to a narrow subset of people, or for specific legitimate purposes. See, e.g., Loan Agreement between PHCV4 Homes and CoreVest, § 9.3. Dissemination of Information.

133. CoreVest breached its agreements with Plaintiffs by, amongst other things, disseminating information it thought damaging to Plaintiffs to entities and individuals interested in investing or lending money to Plaintiffs to allow Plaintiffs to complete construction of the residential developments.

134. CoreVest did not want Plaintiffs to be able to do so because it would then be unable to seize control of the properties for its own benefit.

135. As a direct and proximate result of this breach, Plaintiffs suffered the loss of the Debtor Plaintiffs' operations and properties - which were forced to be sold under market value.

136. As a direct and proximate result of CoreVest's conduct, Bridgetopia suffered a loss of expected profits of $414,779.00.

137. As a direct and proximate result of CoreVest's conduct, Bridgetopia – and its beneficial owners Glass and McMullen – suffered a loss of $723,159.00 of equity in the Bridgetopia assets.

138. As a direct and proximate result of CoreVest's conduct, PH&C suffered a loss of expected profits of $2,379,655.00.

139. As a direct and proximate result of CoreVest's conduct, PH&C – and its beneficial owners Glass, Underwood, and McMullen – suffered a loss of $1,550,955.00 of equity in the PH&C assets.

140. As a direct and proximate result of CoreVest's conduct, PHCV4 Homes suffered a loss of expected profits of $9,384,180.00.

141. As a direct and proximate result of CoreVest's conduct, PHCV4 Homes – and its beneficial owners Glass, Underwood, and McMullen – suffered a loss of $5,036,566.00 of equity in the PHCV4 Homes assets.

142. As a direct and proximate result of CoreVest's conduct, the ultimate beneficial owners of Debtor Plaintiffs Glass, Underwood, and McMullen suffered loss of profits equal to their respective ownership interests in the Debtor Plaintiffs.

143. As a direct and proximate result of CoreVest's conduct, Glass, Underwood, and McMullen have also been made to incur significant legal fees in the amount of $674,000.00, which continues to increase.

**PRAYER FOR RELIEF**

Plaintiffs Bridgetopia, PH&C, PHCV4 Homes, Glass, Underwood, and McMullen seek judgment in their favor and against Encore SFR Finance LLC and CF Encore Purchaser LLC on their claims for tortious interference with business relationships and civil conspiracy, awarding money damages at least in the amount of $1,137,938.00 to Bridgetopia, $3,930,610.00 to PH&C, $14,420,746.00 to PHCV4 Homes, and an amount to Glass, Underwood, and McMullen equal to the amount of damages suffered proportional to their respective ownership interests in the Debtor Plaintiffs, plus at least $674,000.00 for reimbursement of legal fees and costs, plus any other

damages suffered in an amount to be determined at trial, costs of this action including reasonable attorneys' fees, and for such other and further relief as may be just and proper.

Plaintiffs Bridgetopia, PH&C, PHCV4 Homes, Glass, Underwood, and McMullen seek judgment in their favor and against CoreVest American Finance Lender LLC for breach of the implied duty of good faith and fair dealing and breach of contract, awarding money damages at least in the amount of $1,137,938.00 to Bridgetopia, $3,930,610.00 to PH&C, $14,420,746.00 to PHCV4 Homes, and an amount to Glass, Underwood, and McMullen equal to the amount of damages suffered proportional to their respective ownership interests in the Debtor Plaintiffs, plus at least $674,000.00 for reimbursement of legal fees and costs, plus any other damages suffered in an amount to be determined at trial, costs of this action including reasonable attorneys' fees, and for such other and further relief as may be just and proper.

**JURY TRIAL DEMANDED.**

Dated: February 12, 2026

Respectfully Submitted,

*<u>/s/ Stephen P. Leara</u>*
Stephen P. Leara
Spain & Gillon, LLC
505 20th Street North, Suite 1200
Birmingham, AL 35203
sleara@spain-gillon.com
*Counsel for Bridgetopia, LLC; Prominence Homes & Communities, LLC; and PHCV4 Homes, LLC*

*<u>/s/ Danielle E. Douglas</u>*
Danielle E. Douglas
Adams & Reese LLP
1901 Sixth Ave. N., Suite 1110
Birmingham, AL 35203
Danielle.douglas@arlaw.com
*Counsel for Misty M. Glass, Michael McMullen, and Scott Underwood*